UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN HAYES,

    Plaintiff,

v.

CLARIANT PLASTICS & COATINGS, INC.,

    Defendant.

_____/

Case No. 1:19-cv-488

HON. JANET T. NEFF

## OPINION AND ORDER

Plaintiff Dawn Hayes was terminated from her position as Senior Logistics Clerk by Defendant Clariant Plastics & Coatings, Inc. on March 9, 2018. She brought this suit claiming gender and age discrimination, a hostile workplace, retaliation, and violations of the Equal Pay Act and Elliot-Larsen Civil Rights Act. Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 93) and Plaintiff's Counter-Motion for Summary Judgment (ECF No. 95). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

    **I.    BACKGROUND**

Plaintiff is a woman born on March 14, 1965.[1] In 1993, she began working as a Logistics Clerk in the Warehouse Department of Defendant's Albion, Michigan facility. She was promoted

---

[1] The parties filed a "Joint Statement of Undisputed Material Facts" (ECF No. 94), upon which this Court relies for resolution of this motion unless otherwise indicated.

to Senior Logistics Clerk sometime before April 15, 2015. On March 9, 2018, Plaintiff's employment was involuntarily terminated by Defendant (ECF No. 94-3 at PageID.1088).

During her twenty-five years working for Defendant, Plaintiff had a one-hundred percent attendance record, always arrived early, and had a nearly unblemished employment history (ECF No. 95-8). She was reviewed multiple times throughout her career and received positive remarks (*id*. at PageID.1418-1419). At one point she obtained a forklift license, though she was never instructed to operate a forklift (*id*. at PageID.1410). Since she never used the forklift license, she allowed it to lapse (ECF No. 95 at PageID.1262). Plaintiff was never informed that termination could result from this lapse (ECF No. 93-2 at PageID.757).

In early 2018, Defendant initiated a nationwide workforce reduction plan as a cost-savings measure (ECF No. 93-3 at PageID.790). The program, which targeted only non-production employees, included a voluntary and an involuntary phase (ECF No. 93-6 at PageID.820). No one from the Warehouse Department elected to voluntarily separate from Defendant (ECF No. 93-3 at PageID.792). Thus, when not enough volunteers elected to separate, Defendant determined that one individual from the Albion facility would be involuntarily terminated (ECF No. 93-6 at PageID.821).

Albion plant manager, Joe Toma, conducted an analysis to determine which department would be reduced and decided upon the Warehouse Department (*id*. at PageID.823-825). That department, in addition to Plaintiff, included Chris Perjesi, the Warehouse Coordinator, and Brian Duffey, Matt Bradley, and Kyle Dake, the Material Handlers, all of whom had forklift licenses (ECF No. 93-2 at PageID.776).[2] Material Handlers spend most of their shift operating a forklift

---

[2] Ages of the other employees in the Warehouse Department, all of whom are men, at the time Plaintiff was terminated were: Perjesi (46), Dake (36), Bradley (43), and Warehouse Manager Brad Miller (50) (ECF No. 94 at PageID.1079-1080).

2

to move material on and off trucks and to and from production (*id*. at PageID.756-757). Dake was cross-trained in production duties (ECF No. 93-6 at PageID.825). Perjesi was also cross-trained in production and as fill-in for the manager (ECF No. 93-3 at PageID.795). Plaintiff, by the time of her termination, was responsible for releasing orders, production reporting, material picks, printing product labels and other shipping paperwork, and gathering sample chips for shipments (ECF No. 93-5 at PageID.814).

Toma, considering the upcoming termination, created a rating sheet to document his assessment (ECF No. 94-12; ECF No. 93-6 at PageID.833). In the rating sheet he noted that Plaintiff was "under-utilized" because she was less skilled at using the SAP program, did not have a forklift license, and was not trained with "cross-functionality" for other departments (ECF No. 93-6 at PageID.831). Toma determined that Plaintiff could no longer fully perform all warehouse functions or fill in for positions in other departments (*id*.).

Shortly before she was terminated, on March 3, 2018, a routine performance review was conducted for all members of the warehouse team (ECF Nos. 94-21, 94-22, 94-23, 94-24). Plaintiff scored one point above her coworkers, but each of them received an overall "B" rating (*id*.).

Plaintiff was terminated on March 9, 2018 (ECF No. 94-3 at PageID.1088). She claims that the rating sheet was created after the decision to terminate her was already made, as a way to side-step Defendant's policy (ECF No. 95 at PageID.1277).[3] Defendant, on the other hand, claims it was reflective of the legitimate, non-discriminatory reasons that Plaintiff was selected for

---

[3] Defendant's Workforce Reduction Policy gives an order of employees to be laid off during a workforce separation, specifically: temporary employees first, followed by employees with poor performance or absenteeism records, volunteers, and then full-time employees. (ECF No. 94-13 at PageID.1130-1131). Full-time, hourly employees are considered in light of their skill and ability to perform job requirements (*id*.). Length of service is considered only with regards to Defendant's discretionary analysis of skill and ability (*id*.).

3

termination pursuant to the workforce reduction plan.

On May 3, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) (ECF No. 94-7 at PageID.1096). Her Charge alleged discrimination based on sex, age, and under the Equal Pay Act (EPA) (*id.*). The Charge did not, however, allege or check the box for retaliation or a hostile work environment (*id.*). The Charge contained factual allegations centered around her termination and denial of equal wages (*id.*). On March 22, 2019, Plaintiff was issued a "right to sue" letter (ECF No. 94-8 at PageID.1098).

On June 19, 2019, Plaintiff filed her Complaint initiating this case. She included six Counts:

> (I) Title VII gender discrimination for her termination (ECF No. 1 at PageID.1-4);
>
> (II) Age discrimination related to her termination (*id.* at PageID.1-5);
>
> (III) Retaliation under Title VII for her termination (*id.* at PageID.5-6);[4]
>
> (IV) Sexually hostile work environment (*id.*);
>
> (V) Unequal wages, in violation of the Equal Pay Act (*id.* at PageID.6);
>
> (VI) Age and gender discrimination relating to her termination under the Elliott-Larsen Civil Rights Act (*id.* at PageID.6-7).

## II.   ANALYSIS

**A. Motion Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013);

---

[4] Plaintiff has withdrawn her retaliation claim (ECF No. 95 at PageID.1280).

*SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir. 20123) (citation omitted). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The function of the Court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Discussion**

**1. Gender Discrimination (Count I)**

Plaintiff alleges she was terminated based on her gender. To survive summary judgment, she must sufficiently demonstrate all elements of a prima facie case. This requires Plaintiff show that (1) she is a woman, (2) she satisfactorily performed a job which she was qualified for, (3) despite her satisfactory performance and qualifications, she was terminated, and (4) she was treated less favorably than someone outside the class whom she is similarly situated with.[5] *Slapak v. Tiger*

---

[5] Element four can be met by either showing Plaintiff was replaced by someone outside of the protected class or that she was treated less favorably than someone outside the class who she is similarly situated with. Defendant maintains, and Plaintiff does not contend, that she was not

5

*Management Group, LLC*, 594 F. App'x 290, 293-94 (6th Cir. 2014). Whether or not an employee is similarly situated is determined by examining the job title, description, responsibilities, necessary experience, and employees' work records. *Leadbetter v. Gilley* 385 F.3d 683, 691 (6th Cir. 2004). In workforce reduction cases, Plaintiff has a heightened standard to prove her prima facie case: She must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out. . . for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Gragg v. Somerset Technical College*, 373 F.3d 763, 767 (6th Cir. 2004).

Plaintiff has shown the first three elements. Thus, summary judgment turns on the fourth element of Plaintiff's prima facie case. The Court must consider if any employees are similarly situated to Plaintiff and determine if she was treated less favorably than those who are held to be similarly situated. *Leadbetter*, 385 F.3d at 691.

Defendant argues that the only person potentially comparable to Plaintiff, Perjesi, is not similarly situated (ECF No. 93 at PageID.722). Defendant asserts that Perjesi was not similarly situated to Plaintiff because "he had a forklift license and experience, better SAP skills, and was cross-trained in production, as a material handler," and as a fill-in for the manager (*id.* at PageID.737).

Further, to show that Plaintiff was not similarly situated to the Material Handlers Dake and Bradley, Defendant points to Plaintiff's "inferior skill set and decreased duties" (*id*. at PageID.734). Specifically, Defendant claims that Plaintiff never used a forklift, did not maintain

---

replaced, as her job duties were absorbed by other employees (ECF No. 93 at PageID.734). *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530 (6th Cir. 2014); *Barnes v. GenCorp*, 896 F.2d 1457 (6th Cir. 1990). Therefore, the Court analyzes whether Plaintiff was treated differently than similarly situated male employees.

6

a forklift license, had weak SAP skills, could not perform the duties of a Material Handler and was not cross-trained in production functions (*id*. at PageID.734-735).  This, according to Defendant, made Plaintiff the correct choice for termination during the workforce reduction and supports its argument that she is not similarly situated to the male Warehouse Department employees.

Plaintiff argues that she has demonstrated all elements of a prima facie case because (1) she is a woman, (2) she was qualified for her position and performed it satisfactorily since 1999, (3) she was terminated from the Warehouse Department and therefore (4) she was treated less favorably than her similarly situated, male coworkers (ECF No. 95 at PageID.1273).  Plaintiff asserts that she was similarly situated to Perjesi, Dake, and Bradley because they dealt with the same supervisor, were subject to the same standards, and generally performed the same work (*id*. at PageID.1275).

First, Plaintiff argues that she was similarly situated to Warehouse Coordinator Perjesi based on the results of the March 2018 performance evaluations (*id*. at PageID.1278).  Both Perjesi and Plaintiff received "Bs" overall in this evaluation, though Plaintiff scored one point higher on the weighted total (ECF Nos. 94-21, 94-24).  Most relevant to the Court's analysis, however, is that they were evaluated using the same form and criteria.

Plaintiff next argues that she is also similarly situated to Material Handlers Dake and Bradley (ECF No. 95 at PageID.1275).   She claims the only difference between them was that they maintained forklift licenses (*id*.).  She highlights the fact that all warehouse employees report to the same chain of command and work in the same general area in the Albion facility (*id*.).  Further, Plaintiff contends that they all "had the same goal," which was to "track and store incoming raw materials, [and] pull and load outgoing pallets and record the operation in the SAP program" (*id*.).  Plaintiff claims there were no "material differences" between their positions

because none of their positions required special educational or work experience skills, and the general job requirements for all of the Warehouse Department employees were to load and unload trucks, create tracking paperwork, and input data into the SAP system (*id.* at PageID.1275-1276).

Finally, Plaintiff points to her twenty-five years with Defendant where she had an excellent track record, was promoted, and had at one point obtained a forklift license (*id.* at PageID.1274). She was never disciplined for allowing the forklift certification to lapse, was never told it could lead to her termination, and it was not mentioned in the recent performance review (*id.* at PageID.1275).

Considering the job titles, responsibilities, requirements, and performance of the Warehouse Department at Defendant's Albion facility, the Court agrees with Defendant and finds Plaintiff failed to show the fourth element of her prima facie case. The evidence does not show that "all of the relevant aspects of [her] employment situation are 'nearly identical'" to the male Warehouse employees. *Leadbetter,* 385 F.3d at 691. Material Handlers Dake and Bradley had different skills and responsibilities from Plaintiff, as they had forklift licenses, used forklifts regularly to move materials (a task Plaintiff never performed), and Dake was cross-trained in production (ECF No. 93 at PageID.732). Warehouse employees shared the same general goal of on- and off-loading trucks while tracking material through use of the SAP system. However, Plaintiff and the remaining employees performed different tasks and used different skillsets to achieve that goal.

Perjesi was also not similarly situated with Plaintiff as he had production experience, a forklift license, and supervisory skills. As Defendant puts it, Perjesi was able to perform all required job functions while Plaintiff was not (ECF No. 93 at PageID.733). Because Plaintiff neither used a forklift nor maintained a forklift license, never performed the role of a Material

Handler, never acted as a fill-in supervisor, and was not cross-trained in production, she is not similarly situated to the workers who remained after her termination. *See Leadbetter*, 385 F.3d 683.

In sum, Plaintiff is unable to establish a prima facie case of gender discrimination. Therefore, Defendant is entitled to summary judgment on this claim.

### 2. Age Discrimination (Count II)

In addition to gender discrimination, Plaintiff claims she was terminated due to illegal discrimination based on her age. To survive summary judgment on an age discrimination claim, Plaintiff must make a prima facie case showing that (1) she was over the age of forty, (2) she was discharged, (3) she was qualified for the position she was discharged from, and (4) either she was replaced by someone "substantially younger" or she was treated differently from a similarly situated employee not in the protected class. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010); *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003). As discussed in detail previously, age discrimination claims in workforce reduction cases require Plaintiff to meet a heightened standard to prove her prima facie case. *Barnes*, 896 F.2d at 1465.

Defendant argues that Plaintiff is unable to show a prima facie case of age discrimination because (1) she was not technically qualified for her position because she lacked a forklift license and (2) any younger employees were not similarly situated to Plaintiff. Defendant's arguments mirror those presented in the above section on gender discrimination. In summary, the Material Handlers, Dake and Bradley, and the Warehouse Coordinator, Perjesi, had different skills and responsibilities from Plaintiff, and are therefore not similarly situated. Specifically as to Perjesi, Defendant argues Plaintiff's claim fails as a matter of law because he is forty-six, and therefore not "significantly younger" than Plaintiff. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727

9

(6th Cir. 2007) (holding that "substantially younger" means at least eight years younger).

Plaintiff argues she was qualified for the position she held but treated differently than her male coworkers. She was employed by Defendant for twenty-five years, had an "excellent track record," previously obtained a forklift license and possessed the skills to use it, and was never disciplined for allowing her license to lapse (ECF No. 95 at PageID.1274). Like previously discussed, Plaintiff points to the fact that she and the Material Handlers shared a supervisor, worked in the same area, and worked to achieve the same goal, yet as the only one terminated she was treated differently (*id*. at PageID.1275).

As previously discussed in the gender discrimination section above, Plaintiff is unable to demonstrate all four elements of a prima facie case for age discrimination. Even if a forklift license was not a requirement to be qualified for her position, there is no employee similarly situated to Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

### 3. Hostile Work Environment (Count IV)

Plaintiff alleges Defendant maintained a hostile work environment (HWE).[6] This claim is subject to an exhaustion requirement and a 300-day limitations period. *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 374 (6th Cir. 2002); 42 U.S.C. § 2000e–5(e). To determine if Plaintiff properly exhausted her HWE claim, the Court considers the allegations contained in her

---

[6] Plaintiff's allegations are based on the fact that during her time with Defendant, she was the only woman working in the first-shift production portion of the Albion, Michigan facility (ECF No. 95 at PageID.1262). She contends that over the course of her employment, she was assaulted, stalked, called names, had sexually suggestive jokes made at her expense, while her complaints to management went ignored (*id*.). She claims that some employees referred to Plaintiff as a "bitch" and others made sexual comments about her (*id*.). Plaintiff quotes another worker who said that it was the "culture" to discuss "breast sizes," "penis sizes," beating women, and sex at work (*id*. at PageID.1263). Defendant held sensitivity training, though the parties disagree about the effectiveness of this training.

10

Charge to the Equal Employment Opportunity Commission (EEOC). *Scott v. Eastman Chemical Co.*, 275 F. App'x 466, 471 (6th Cir. 2008). Only allegations sufficiently specific to prompt investigation of a hostile work environment, not discrete incidents of discrimination alone, are sufficient "to put the EEOC on notice" of an HWE claim. *Jones v. City of Franklin*, 309 F. App'x 938, 943 (6th Cir. 2009); *Scott*, 275 F. App'x at 471. Further, any HWE claims are subject to a 300-day limitations period. 42 U.S.C. § 2000e–5(e); *Diepenhorst v. City of Battle Creek*, 2007 WL 1141492 *2 (W.D. Mich., Apr. 17, 2007). If Plaintiff failed to exhaust her administrative remedies or failed to file her Charge within the 300-day statutory limitation period, then summary judgment in favor of Defendant is proper. *Jones* 309 F. App'x at 943; *Banerjee v. University of Tennessee*, 820 F. App'x 322, 330 (6th Cir. 2020).

First, Defendant argues that summary judgment in its favor is appropriate because Plaintiff failed to sufficiently allege an HWE in her Charge to the EEOC (ECF No. 93 at PageID.740). Specifically, she both failed to check the box that would have provided notice of her HWE claim and alleged only isolated events of discrimination (*id.*). Defendant argues that allegations made after her initial Charge, such as those in her rebuttal letter, do not expand the original Charge and therefore do not properly exhaust her claim (ECF No. 96 at PageID.1522).

Defendant next argues that summary judgment in its favor is proper because even if Plaintiff had sufficiently exhausted her claim, she is time-barred by the Title VII 300-day limitations period (ECF No. 93 at PageID.740). Defendant points to Plaintiff's deposition testimony, where she testified that the most recent event of sexual harassment she is alleging was an instant message from Brian Pierce, prior to June 2017 (ECF No. 93-2 at PageID.771). Using Pierce's retirement date, June 30, 2017, the three-hundred-day window for Plaintiff to make her claim would have expired on April 26, 2018 (*id.*).

11

Plaintiff argues in response that while she did not check the HWE box in her Charge to the EEOC, she provided notice of the claim by alleging sufficient facts in her rebuttal letter to prompt an HWE investigation (ECF No. 95 at PageID.1280). In her rebuttal letter, she alleged "daily/weekly/monthly sexual harassment" and during her deposition and to the EEOC she discussed regular, daily occurrences of sexual harassment (*id*.). She claims that because her allegations involved consistent, daily harassment, her filling of the EEOC charge within three months of her termination satisfies the 300-day limitations period (*see id*. at PageID.1281). Plaintiff asks the Court to liberally construe her EEOC charge because she represented herself at the EEOC stage (*id*. (citing *Tisdale v. Federal Express Corp.*, 415 F.3d 516 (6th Cir. 2005)). Specifically, she asks the Court to find that she was not alleging isolated incidents but "a continuous course of conduct" as described in her rebuttal letter (ECF No. 95 at PageID.1281).

Defendant has shown it is entitled to summary judgment on Plaintiff's HWE claim. First, the Court does not consider Plaintiff's rebuttal letter to have expanded her Charge to the EEOC. *See, e.g., Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges . . . is to put the charged party on notice"). The allegations contained in her initial Charge, including discrete incidents of discrimination or harassment, are insufficient to properly exhaust her HWE claim. *Jones*, 309 F. App'x at 943. Further, the most recent incident of sexual harassment alleged by Plaintiff occurred prior to June 30, 2017, therefore she is time-barred for failing to file her HWE claim within the 300-day limitations period.

Accordingly, Defendant is entitled to summary judgment because Plaintiff did not exhaust her HWE claim.

### 4. Violation of the Fair Labor Standards Act Regarding Equal Pay (Count V)

Plaintiff alleges that Defendant violated the Fair Labor Standards Act by paying her less than her male coworkers. Under the Fair Labor Standards Act, employers are prohibited from paying one employee less than an employee of the opposite sex for equal work because of the employees' sex. Equal Pay Act of 1963, 29 U.S.C. § 206(d). To establish a prima facie equal pay case, Plaintiff must prove (1) Defendant paid her different wages compared to employees of the opposite sex (2) for equal work that (3) requires equal skill, effort, and responsibility and (4) was performed under similar conditions. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). If Plaintiff can establish this prima facie case, Defendant can then show that the pay differential was for any factor "other than sex." *Id*. at 360.

Defendant argues that Plaintiff cannot establish a prima facie case because she did not perform equal work to any male comparators. Building on the arguments discussed previously, Defendant asserts that neither the Material Handlers nor Perjesi performed the same work as Plaintiff. Defendant further points to the fact that Dake made less than Plaintiff at the time of her termination and Perjesi was classified as a technical employee, a classification which involves a separate pay scale. Finally, Defendant asserts that Perjesi's job required superior skills and he provided additional expertise that was needed in the Warehouse Department (ECF No. 93 at PageID.746).

Plaintiff retorts that Perjesi did not have superior skills. Also, she previously had a forklift license, which she was capable of re-obtaining, and could therefore have performed the tasks that the other warehouse employees performed. She claims that not only were her desk and Perjesi's desks next to each other, but they did the "exact same things." (ECF No. 95 at PageID.1282). Plaintiff also claims to have a superior work record and higher remarks on the March 2018

13

performance review.

Plaintiff has failed to show that she was paid less than her male counterparts because of her sex and not because she performed different work. That she had or could have reobtained a forklift license does not determine the outcome. The facts show that she had different responsibilities, maintained different skillsets, and performed different tasks from the remaining members of the Warehouse team. Accordingly, Defendant is entitled to summary judgment on Plaintiff's equal pay claim.

**5. Violation of the Elliot-Larsen Civil Rights Act (Count VII).**

Plaintiff alleges Defendant violated the Elliot Larsen Civil Rights Act. "In any action in which the district court has original jurisdiction, it also has 'supplemental jurisdiction over all other claims that are so related to claims in the action within such jurisdiction that they form part of the same case or controversy.'" *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (quoting 28 U.S.C. § 1367(a)). However, the Court may, pursuant to 28 U.S.C. 1367(c)(3), decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the claims over which it has original jurisdiction are dismissed. *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014). "Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C. § 1367(a)).

Here, the Court has dismissed all of Plaintiff's federal claims over which it has original jurisdiction. Therefore, in exercising its discretion, the Court declines to grant supplemental jurisdiction over Plaintiff's state-law claims.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 93) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Counter-Motion for Summary Judgment (ECF No. 95) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are dismissed without prejudice.


Dated: March 6, 2023                                /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge